

# FILED

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OKLAHOMA

AUG 0 7 2026

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

|  |  |
|---|---|
| 1. BRIAN S. CREED, | : |
| *Plaintiff,* | : |
| v. | : |
| 2. ARVEST BANK; | : |
| 3. EXPERIAN INFORMATION SOLUTIONS, INC.; | : |
| 4. EQUIFAX INFORMATION SERVICES LLC; and | : |
| 5. TRANS UNION LLC, | : |
| *Defendants.* | : |

2 6 CV - 4 8 4 GKF - CDL

Case No. _____

## COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff Brian S. Creed, proceeding pro se, alleges as follows:

### I. NATURE OF THE ACTION

1. This action arises under the Fair Credit Reporting Act and concerns factual inaccuracies in the reporting of Plaintiff's Arvest mortgage.

### II. JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred here. The disputed reporting

*fees paid*
*(4) Summons*

concerns Plaintiff's mortgage on his residence in Rogers County, Oklahoma; Plaintiff received and reviewed the inaccurate reports, submitted his disputes, and received the resulting adverse actions in this District; and Plaintiff suffered the resulting injuries here.

## III. PARTIES

4. Plaintiff Brian S. Creed is a natural person residing in Rogers County, Oklahoma and a consumer within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

5. Defendant Arvest Bank ("Arvest") serviced Plaintiff's mortgage loan and furnished information about the account to consumer reporting agencies.

6. Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax"), and Trans Union LLC ("Trans Union") are consumer reporting agencies within the meaning of 15 U.S.C. § 1681a(f).

7. Experian, Equifax, and Trans Union are referred to collectively as the "CRA Defendants."

## IV. FACTUAL ALLEGATIONS

### A. BACKGROUND

8. On July 21, 2022, Plaintiff obtained a mortgage loan from Arvest Bank secured by real property located in Rogers County, Oklahoma.

9. In November 2025, Arvest and Plaintiff entered into a trial modification plan requiring three monthly payments of $3,630.07 for December 2025, January 2026, and February 2026, to be paid in the calendar month they were due. No payment was due in November 2025 under this plan.

10. The CRA Defendants' reports reflected the trial-plan arrangement by reporting a $3,630 scheduled-payment amount and a partial-payment-arrangement notation for the relevant period. Those report fields represented that $3,630 was the operative monthly payment obligation during the trial period.

11. Plaintiff paid Arvest $3,630.07 on December 2, 2025, January 30, 2026, and February 27, 2026. Arvest accepted each payment as a payment required under the trial plan.

12. Nevertheless, the CRA Defendants' monthly payment-history grids reported severe delinquency for the trial-plan months, including 180 days past due on Experian and Equifax and 120 days past due on Trans Union.

13. The 120- and 180-day entries were not merely historical references to an earlier delinquency. They appeared as payment-status entries for the corresponding monthly periods and communicated that the payment obligation for those months had not been paid and remained delinquent.

14. The permanent loan modification became effective March 1, 2026, capitalized the arrears, set the unpaid balance at $450,582.02, and made the first modified payment of $3,634.12 due April 1, 2026. No payment was due in March 2026.

15. Despite the absence of any March payment obligation, the CRA Defendants reported a March 2026 monthly payment-history entry of 180 days past due on Experian and Equifax and 120 days past due on Trans Union. Those entries represented that a March payment was delinquent when no March payment was due.

16. On March 23, 2026, Arvest advised Plaintiff that once the modification was processed, the loan would be reported as current if Plaintiff made the required monthly payments during the month they were due. Plaintiff thereafter made each

modified payment due from April through July 2026 during the calendar month it was due, and Arvest accepted each payment.

17. On or about March 23, 2026, through foreclosure counsel, Arvest represented to the District Court of Rogers County, Oklahoma, that Plaintiff's default had been cured and requested dismissal of the foreclosure action. The foreclosure action was thereafter dismissed.

### B. ARVEST BANK

18. On April 26, 2026, Arvest received Plaintiff's written dispute challenging the balance and the payment-history, delinquency, partial-payment, foreclosure, and account-status reporting during the trial-plan and modification period.

19. Upon information and belief, Experian and Equifax received Plaintiff's first written disputes on May 8, 2026, and Trans Union received Plaintiff's first written dispute on May 9, 2026.

20. Plaintiff's first disputes challenged the balance and the payment-history, delinquency, partial-payment, foreclosure, and account-status reporting during the trial-plan and modification period.

21. Upon information and belief, each CRA Defendant transmitted Plaintiff's dispute to Arvest, and Arvest received each dispute notice.

22. Plaintiff's supporting records included payment records from Arvest's consumer portal; the permanent modification agreement showing its terms, effective date, modified balance, and first-payment date; the filed foreclosure-dismissal record; and communications with Arvest.

23. Upon information and belief, Arvest reported to each CRA Defendant that it had verified the disputed information and did not modify, delete, or block any of the information identified in Plaintiff's disputes.

24. On May 20, 2026, Arvest responded to Plaintiff and maintained that its reporting was accurate and without error.

25. On May 29, 2026, Plaintiff filed a Consumer Financial Protection Bureau complaint concerning Arvest's continued furnishing and verification of the disputed information.

26. On June 2, 2026, Plaintiff emailed Arvest Mortgage President Chris Evans concerning Arvest's continued furnishing and verification of the disputed information.

27. On June 11, 2026, through its CFPB response to Plaintiff, Arvest again maintained that the disputed reporting was accurate and without error.

28. On June 25, 2026, Arvest received a pre-suit demand from Plaintiff identifying the disputed information and again enclosing supporting records.

29. In July 2026, the CRA Defendants received Plaintiff's second disputes challenging the remaining fields, including the November 2025 through March 2026 delinquency ratings, and enclosing additional records.

30. Upon information and belief, Experian and Trans Union forwarded the second disputes to Arvest. Equifax declined to reinvestigate, stating, "Consumer has disputed this account at least twice within the last 90 days."

31. Upon information and belief, Arvest again received and responded to the second disputes forwarded by Experian and Trans Union and again verified the challenged information.

32. After the CRA Defendants completed or terminated the foregoing dispute proceedings, all three continued reporting one or more of the challenged Arvest fields without correction.

33. Arvest received five dispute notices transmitted by the CRA Defendants. Each notice concerned the challenged reporting described above. Plaintiff provided supporting documentation with each dispute, and Arvest possessed the underlying payment, modification, and account records. Arvest nevertheless maintained that its reporting was accurate and failed to correct the remaining challenged information.

34. Despite the notices and records described above, Arvest repeatedly verified the challenged information without correcting it.

### C. EXPERIAN INFORMATION SOLUTIONS, INC.

35. On May 1, 2026, Experian reported the following information on the Arvest tradeline: a $469,555 balance although the permanent modification set the unpaid balance at $450,582.02 effective March 1, 2026; a $3,630 scheduled payment for November 2025 although the trial plan required payments only from December 2025 through February 2026; a $3,630 scheduled payment and payment-history rating for March 2026 as 180 days delinquent, although no payment was due that month; monthly payment-history ratings of 180 days past due for November 2025 through February 2026 although Plaintiff made each required trial-plan payment during the calendar month due; and $0 paid in January 2026 although Plaintiff paid $3,630.07 on January 30, 2026.

36. On May 8, 2026, Experian received Plaintiff's first written dispute and supporting documentation including modification, payment, foreclosure-dismissal, and Arvest records.

37. On May 29, 2026, Plaintiff filed a Consumer Financial Protection Bureau complaint concerning Experian's continued reporting.

38. On June 10, 2026, Experian issued the results of its first reinvestigation, which retained the disputed errors and added a $29,477 payment dated April 29, 2026, that Plaintiff did not make.

39. Upon information and belief, after completing its first reinvestigation, Experian furnished reports containing the challenged Arvest information for credit decisions.

40. Discover, Credit Union One, PenFed, and Citizens Bank took adverse action against Plaintiff. Each identified Experian as a report source, and the reports contained the challenged Arvest information.

41. Credit Union One later advised Plaintiff that the "biggest hurdle" was his recent payment history and specifically identified his mortgage.

42. On July 6, 2026, Experian received Plaintiff's second dispute of the remaining inaccuracies with supporting documentation.

43. On July 21, 2026, Experian issued the results of its second reinvestigation but retained the same factual errors reflected in its June 10, 2026 dispute results.

44. Experian received two formal disputes and a CFPB complaint, each accompanied by records concerning the challenged reporting. Experian nevertheless retained the challenged reporting after both reinvestigations.

45. Experian retained the challenged information even though the records accompanying Plaintiff's disputes included the permanent modification agreement and Arvest payment records.

### D. EQUIFAX INFORMATION SERVICES LLC

46. On May 1, 2026, Equifax reported the following information on the Arvest tradeline: a $469,555 balance although the permanent modification set the unpaid balance at $450,582.02 effective March 1, 2026; a $3,630 scheduled payment for November 2025 although the trial plan required payments only from December 2025 through February 2026; a $3,630 scheduled payment and payment-history rating for March 2026 as 180 days delinquent, although no payment was due that month; monthly payment-history ratings of 180 days past due for November 2025 through February 2026 although Plaintiff made each required trial-plan payment during the calendar month due; and $0 paid in January 2026 although Plaintiff paid $3,630.07 on January 30, 2026.

47. On May 8, 2026, Equifax received Plaintiff's first written dispute and supporting documentation including modification, payment, foreclosure-dismissal, and Arvest records.

48. By May 22, 2026, Equifax issued the results of its first reinvestigation and corrected the balance to $450,488 for May 2026, but retained the remaining disputed information and added a $29,477 payment that Plaintiff did not make.

49. Equifax thereafter furnished reports containing the challenged Arvest information for credit decisions.

50. Red Crown Credit Union and Ally used Equifax reports containing the challenged Arvest information to price Plaintiff's vehicle financing, resulting in less favorable terms, including a higher interest rate on the financing Plaintiff obtained.

51. On May 29, 2026, Plaintiff filed a Consumer Financial Protection Bureau complaint concerning Equifax's continued reporting.

52. On June 18, 2026, Equifax stated that it updated the account, but its reporting maintained the errors previously disputed.

53. On July 9, 2026, Equifax received Plaintiff's second written dispute concerning the Arvest account.

54. The second dispute challenged the retained severe-delinquency history and enclosed the modification, payment, foreclosure-dismissal, and prior-reinvestigation records.

55. Upon information and belief, Equifax terminated the second reinvestigation without forwarding the July dispute to Arvest.

56. Equifax stated that Plaintiff had disputed the account twice within ninety days. Before July 9, Plaintiff had submitted only one dispute directly to Equifax.

57. The July dispute included the modification, payment, foreclosure-dismissal, prior-reinvestigation, and latest-report records. The $29,477 payment and changed historical reporting did not exist when Plaintiff submitted his first dispute.

58. Equifax's July 27, 2026 report displayed additional inaccurate or internally inconsistent payment information: $0 actual-payment amounts for December 2025, February 2026, and May 2026; a nonexistent $29,477 payment in the June 2026 payment field with a payment date of April 29, 2026; a $3,585 scheduled-payment amount for December 2025; and failure to accurately display Plaintiff's payments made from April through July 2026.

59. Equifax received two formal disputes and a CFPB complaint, each accompanied by records concerning the challenged reporting. Its first reinvestigation retained challenged information and added a $29,477 payment Plaintiff never made. Equifax then terminated the second dispute as repetitive even though that dispute included the new information

described in Paragraph 57. Its July 27 report thereafter displayed the additional errors described in Paragraph 58.

60. Equifax retained the challenged information despite receiving the modification, payment, foreclosure-dismissal, prior-reinvestigation, and updated-report records described above.

### E. TRANS UNION LLC

61. On May 1, 2026, Trans Union reported the following information on the Arvest tradeline: a $469,555 balance although the permanent modification set the unpaid balance at $450,582.02 effective March 1, 2026; a $3,630 scheduled payment for November 2025 although the trial plan required payments only from December 2025 through February 2026; a $3,630 scheduled payment and payment-history rating for March 2026 as 120 days delinquent, although no payment was due that month; monthly payment-history ratings of 120 days past due for November 2025 through February 2026 although Plaintiff made each required trial-plan payment during the calendar month due; and $0 paid in January 2026 although Plaintiff paid $3,630.07 on January 30, 2026.

62. On May 9, 2026, Trans Union received Plaintiff's first written dispute and supporting documentation including modification, payment, foreclosure-dismissal, and Arvest records.

63. By May 23, 2026, Trans Union issued the results of its first reinvestigation, changed the balance to $450,488 for May 2026, retained the challenged payment delinquency history for November 2025 through March 2026, retained the $0 payment for January 2026, and added a nonexistent $29,477 payment dated April 29, 2026.

64. Trans Union thereafter furnished reports containing the challenged Arvest information for credit decisions.

65. Prosper, Goldman Sachs Bank USA, and U.S. Bank took adverse action against Plaintiff using Trans Union reports containing the challenged Arvest information. Their adverse-action notices cited serious recent delinquency.

66. On May 29, 2026, Plaintiff filed a Consumer Financial Protection Bureau complaint concerning Trans Union's continued reporting.

67. On July 6, 2026, Trans Union received Plaintiff's second documented dispute of the remaining inaccuracies.

68. On or around August 1, 2026, Trans Union marked Plaintiff's second dispute closed. As of August 5, 2026, Trans Union continued displaying the challenged Arvest reporting without correction.

69. Trans Union received two formal disputes and a CFPB complaint, each accompanied by records concerning the challenged reporting. Trans Union nevertheless retained the challenged reporting after its first reinvestigation and the closure of the second dispute, and its first reinvestigation added a $29,477 payment Plaintiff never made.

70. Trans Union retained the challenged information despite receiving the modification, payment, foreclosure-dismissal, and Arvest records described above.

## V. DAMAGES

71. Defendants' conduct caused Plaintiff actual damages. The reports furnished to the creditors identified above caused credit denials, less favorable credit terms, increased borrowing costs, and other adverse actions. Plaintiff also experienced emotional distress including but not limited to anxiety, embarrassment, frustration, and loss of sleep.

## VI. CLAIMS FOR RELIEF

### COUNT I
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681s-2(b)
### Against Arvest Bank

72. Plaintiff incorporates by reference paragraphs 1 through 71.

73. After receiving the CRA Defendants' dispute notices, Arvest was required under 15 U.S.C. § 1681s-2(b) to reasonably investigate, review the information provided, report its results, and correct inaccurate, incomplete, or unverifiable information.

74. Arvest violated § 1681s-2(b) by failing to conduct reasonable investigations and repeatedly verifying objectively inaccurate or materially misleading information despite possessing the payment, modification, and account records necessary to correct it.

75. Arvest's violation was negligent.

76. Alternatively, Arvest's violation was willful because it acted knowingly or with reckless disregard of its duties under the FCRA.

77. Arvest's violation was an actual and proximate cause of Plaintiff's damages.

### COUNT II
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681i
### Against Experian Information Solutions, Inc.

78. Plaintiff incorporates by reference paragraphs 1 through 71.

79. Under 15 U.S.C. § 1681i, Experian was required to reasonably reinvestigate Plaintiff's disputes and delete or modify inaccurate, incomplete, or unverifiable information.

80. The disputed information was objectively and readily verifiable from Plaintiff's supporting documents and Arvest's records.

81. Experian failed to conduct reasonable reinvestigations in violation of 15 U.S.C. § 1681i.

82. Experian's violation was negligent.

83. Alternatively, Experian's violation was willful because it acted knowingly or with reckless disregard of its duties under the FCRA.

84. Experian's violation was an actual and proximate cause of Plaintiff's damages.

## COUNT III
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681e(b)
### Against Experian Information Solutions, Inc.

85. Plaintiff incorporates by reference paragraphs 1 through 71.

86. Under 15 U.S.C. § 1681e(b), Experian was required to follow reasonable procedures to assure maximum possible accuracy when preparing Plaintiff's reports.

87. Independently of the reinvestigation failures alleged in Count II, Experian prepared the consumer reports described in Paragraphs 39 and 40 using unreasonable procedures to assure maximum possible accuracy. Those reports contained one or more of the inaccurate or materially misleading items described in Paragraphs 35 and 38.

88. Experian's violation was negligent.

89. Alternatively, Experian's violation was willful because it acted knowingly or with reckless disregard of its duties under the FCRA.

90. Experian's violation was an actual and proximate cause of Plaintiff's damages.

## COUNT IV

### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681i
### Against Equifax Information Services LLC

91. Plaintiff incorporates by reference paragraphs 1 through 71.

92. Under 15 U.S.C. § 1681i, Equifax was required to reasonably reinvestigate Plaintiff's disputes and delete or modify inaccurate, incomplete, or unverifiable information.

93. The disputed information was objectively and readily verifiable from Plaintiff's supporting documents and Arvest's records.

94. Equifax failed to conduct reasonable reinvestigations and terminated Plaintiff's July dispute as repetitive despite new relevant information and supporting documentation, in violation of 15 U.S.C. § 1681i.

95. Equifax's violation was negligent.

96. Alternatively, Equifax's violation was willful because it acted knowingly or with reckless disregard of its duties under the FCRA.

97. Equifax's violation was an actual and proximate cause of Plaintiff's damages.

## COUNT V

### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681e(b)
### Against Equifax Information Services LLC

98. Plaintiff incorporates by reference paragraphs 1 through 71.

99. Under 15 U.S.C. § 1681e(b), Equifax was required to follow reasonable procedures to assure maximum possible accuracy when preparing Plaintiff's reports.

100. Independently of the reinvestigation failures alleged in Count IV, Equifax prepared the consumer reports described in Paragraphs 49 and 50 using unreasonable procedures to assure maximum possible accuracy. Those reports contained one or more of the inaccurate or materially misleading items described in Paragraphs 46 and 48.

101. Equifax's violation was negligent.

102. Alternatively, Equifax's violation was willful because it acted knowingly or with reckless disregard of its duties under the FCRA.

103. Equifax's violation was an actual and proximate cause of Plaintiff's damages.

## COUNT VI
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681i
### Against Trans Union LLC

104. Plaintiff incorporates by reference paragraphs 1 through 71.

105. Under 15 U.S.C. § 1681i, Trans Union was required to reasonably reinvestigate Plaintiff's disputes and delete or modify inaccurate, incomplete, or unverifiable information.

106. The disputed information was objectively and readily verifiable from Plaintiff's supporting documents and Arvest's records.

107. Trans Union failed to conduct reasonable reinvestigations in violation of 15 U.S.C. § 1681i.

108. Trans Union's violation was negligent.

109. Alternatively, Trans Union's violation was willful because it acted knowingly or with reckless disregard of its duties under the FCRA.

110. Trans Union's violation was an actual and proximate cause of Plaintiff's damages.

## COUNT VII
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681e(b)
### Against Trans Union LLC

111.    Plaintiff incorporates by reference paragraphs 1 through 71.

112.    Under 15 U.S.C. § 1681e(b), Trans Union was required to follow reasonable procedures to assure maximum possible accuracy when preparing Plaintiff's reports.

113.    Independently of the reinvestigation failures alleged in Count VI, Trans Union prepared the consumer reports described in Paragraphs 64 and 65 using unreasonable procedures to assure maximum possible accuracy. Those reports contained one or more of the inaccurate or materially misleading items described in Paragraphs 61 and 63.

114.    Trans Union's violation was negligent.

115.    Alternatively, Trans Union's violation was willful because it acted knowingly or with reckless disregard of its duties under the FCRA.

116.    Trans Union's violation was an actual and proximate cause of Plaintiff's damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award:

A. Actual damages under 15 U.S.C. §§ 1681n(a)(1) and 1681o(a), as applicable;

B. Statutory damages and punitive damages for willful violations under 15 U.S.C. § 1681n;

C. The costs of this action and reasonable attorney's fees recoverable under 15 U.S.C. §§ 1681n and 1681o;

D. Prejudgment interest to the extent permitted by law;

E. Post-judgment interest pursuant to 28 U.S.C. § 1961; and

F. Such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 7, 2026

Respectfully submitted,

Brian S. Creed, Pro Se

11655 E. 420 Rd.

Claremore, OK 74017

Telephone: (918) 304-0732

Email: BrianSCreed@gmail.com